Rebekah R. Conroy
rconroy@stoneconroy.com
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 400-4181

*Of counsel:*
Ronald M. Daignault
GOLDBERG SEGALLA LLP
711 Third Avenue – Suite 1900
New York, NY 10017
Telephone: (646) 292-8700
rdaignault@goldbergsegalla.com

Richard Juang
GOLDBERG SEGALLA LLP
8000 Maryland Avenue – Suite 640
St. Louis, MO 63105
314-446-3350
rjuang@goldbergsegalla.com

*Attorneys for Defendant Amneal
Pharmaceuticals LLC*

Constance S. Huttner
chuttner@buddlarner.com
Anandita Vyakarnam
avyakarnam@buddlarner.com
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
Telephone: (973) 379-4800

*Attorneys for Defendants
Dr. Reddy's Laboratories, Inc. and
Dr. Reddy's Laboratories, Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RECKITT BENCKISER, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>AMNEAL PHARMACEUTICALS LLC,<br>et al.,<br><br>                              Defendants. | Case No. 15-cv-02155 (RMB) (JS)<br>(Consolidated)<br><br>(Filed Electronically) |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR ATTORNEY'S FEES

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      Reckitt misled the Court at the March 15 teleconference in order to persuade the Court to conduct an unnecessary trial on the merits. ................................................................................4

II.     Reckitt intentionally mischaracterized Judge Stark's claim construction ruling to excuse its decision to proceed to trial. .................7

III.    That this case went to trial and Dr. Davies provided extensive testimony does not mean that Reckitt's infringement case was reasonable nor that a trial was warranted. ...............................................11

IV.     Reckitt should have withdrawn its DOE theory in this case after it did so as a matter of law in *Aurobindo*. .....................................14

V.      Conclusion ..........................................................................................15

Reckitt's lengthy 40-page opposition brief does not respond to the fundamental bases for Defendants' motion for attorney's fees—Reckitt's misconduct during the litigation and its insistence on pushing its meritless infringement claims to trial after the Court adopted the *Aurobindo* claim constructions. Instead, Reckitt focuses on events and rulings that preceded the Court's claim construction order and, thus, are simply not relevant to Defendants' present motion. Reckitt also continues its pattern of obfuscation and mischaracterization.

For example, Reckitt spends considerable ink on the Court's rejection of Defendants' motion for judgment on the pleadings and motion for summary judgment, both of which preceded the Court's claim construction order by many months. *See* D.I. 233 at 11-16. These events are not pertinent to Defendants' argument that Reckitt should have dropped this case after the Court adopted Judge Stark's *Markman* ruling. Further, those motions centered on the applicability of the '252 patent disclaimer, not on whether Defendants' products infringed under the *Aurobindo* claim construction. Thus, those earlier motions provide no insight as to whether Reckitt's push to trial was reasonable once this Court adopted the *Aurobindo* claim constructions.

Nor is it relevant that Judge Stark and the Federal Circuit denied Aurobindo's motion for attorney's fees, which is the centerpiece of Reckitt's

opposition. *See* D.I. 233 at 19, 22-24, 28, and 38-40. Aurobindo moved for an award of attorneys' fees from the inception of Reckitt's case, arguing that Reckitt should never have filed suit and should pay its fees, in part, to discourage brand-drug companies from filing frivolous suits to keep generic competitors off the market. Judge Stark rejected this argument because he found that Reckitt performed a sufficient investigation of Aurobindo's proposed product, presented claim construction arguments that were not unreasonable, and withdrew the '252 patent from the case after determining it no longer had a good-faith basis to assert it. *See Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.,* No. 14- 1203, 2017 WL 4613643 (D. Del. Oct. 16, 2017) ("*Aurobindo* III"). Judge Stark also noted that generic competitors were already in the market when Reckitt sued Aurobindo. Thus, "[t]he court [found] no basis . . . to conclude that Reckitt chose to file a frivolous case to delay entry of an additional generic manufacturer." *Aurobindo* III, 2017 WL 4613643 at *3. None of these findings undercut Defendants' argument here because Defendants seek fees only from the adoption of Judge Stark's claim construction through this Court's final judgment.

Finally, Defendants' decision to forego the filing of a second summary-judgment motion after Judge Stark granted Aurobindo's summary-judgment motion of non-infringement does not excuse Reckitt's continued prosecution of claims on which it could not possibly prevail after the Court's *Markman* ruling.

Reckitt had (falsely) told the Court that it had structural evidence of non-infringement in this case that was not available to it in the *Aurobindo* case.[1]

Defendants chose to address this allegedly new and different evidence at trial, instead of risking the possibility that this alleged evidence would create a fact issue that would preclude summary-judgment of non-infringement, particularly where the expirations of Defendants' 30-month stays were approaching. And, of course, once at trial, Defendants' counsel was obligated to zealously represent each of their clients by putting on experts and filing pre-trial motions. None of this changes the fact that Reckitt should have dropped this case after the Court construed the claims and it became obvious that Reckitt could not prove that Defendants' ANDA products had two distinct formulations.

By the time of the March 15, 2017 teleconference with the Court, Reckitt had already lost in *Aurobindo,* its third losing case involving generic single formulation matrix tablets. Judge Stark had rejected Reckitt's proposed construction of "portion" and concluded that Reckitt's claims, like the '252 patent claims the Federal Circuit construed in *Watson,* require two distinct formulations of guaifenesin, *not* just the single extended-release formulation present in Aurobindo's matrix tablets. In so ruling, Judge Stark rejected the same argument the Federal Circuit in *Watson* and the district court in *Perrigo* had rejected

---

[1] *See Aurobindo* Fees Tr. at 26:4-24, and 28:4-22 (Conroy Decl. Ex. D).

previously, namely, the guaifenesin on the surface of Aurobindo's tablets constituted a distinct immediate-release portion. Thus, once this Court adopted Judge Stark's claim constructions, Reckitt should have conceded that it had no case here, and stipulated to non-infringement. Indeed, this was exactly the point Judge Prost made when she stated, "it might be fair to say that [Reckitt] should have known it [had no chance of success] after claim construction."[2]

For all of these reasons, as well as the reasons set forth in Defendants' moving brief, Defendants' motion for attorneys' fees should be granted.

I.   **Reckitt misled the Court at the March 15 teleconference in order to persuade the Court to conduct an unnecessary trial on the merits.**

During the March 15, 2017 teleconference, this Court posed a simple question to Reckitt: "assuming I adopt and am persuaded by [Judge Stark's] claim constructions, what at the end of the day does it mean for my cases to go forward?" *See* March 15, 2017 Hearing Transcript, 4:6-8 (D.I. 226-15, Conroy Decl. Ex. A). The Court further explained, "[a]ll I'm interested in trying at this juncture is a case that receives additional evidence that Judge Stark did not have. . . ." *Id.* at 27:4-17.

---

[2] *See* Transcript for *Reckitt Benckiser LLC v. Aurobindo Pharma Ltd*., Appeal No. 17-1895, at 14:16-19, (D.I. 226-20, Conroy Decl. Ex. F.) Though Chief Judge Prost made this statement during oral argument on Aurobindo's appeal, it applies here with equal, if not greater force. Unlike Aurobindo's fees motion, which sought an award of fees from the inception of Reckitt's case, Defendants' motion seeks an award from the date of the Court's claim construction order, when it should have been obvious to Reckitt that it had no case.

Reckitt's response to the Court's straight-forward question was less than candid, to say the least. Reckitt insisted that trial should proceed because it had structural data allegedly showing that Defendants' ANDA products had two distinct portions of guaifenesin. Reckitt further claimed that such structural evidence was not available to it in the *Aurobindo* case. *Id.* 18:19-23 ( "Presumably in the *Aurobindo* case the structural data wasn't available to the plaintiffs, that the *Aurobindo* tablet didn't have the appropriate structure to make that argument, because I'm sure the counsel would have made that argument."). But Reckitt's statement to the Court was simply not true, as Defendants explained in their opening brief. *See* D.I. 226-1 at pp. 12-14. Reckitt, in fact, had the very same type of Raman evidence about Aurobindo's tablet that it presented at the trial of this case. But Reckitt chose not to rely on Raman data in *Aurobindo* because it "*showed nothing*. . . . [and] also *in no way* informed the [infringement] issues on summary judgment after—in particular after the claim construction order when Your Honor found there was no spatial requirement to the '821 and '032 patent." *See Aurobindo* Fees Tr. at 28:19-22 (D.I. 226-18, Ex. D to Conroy Decl.).

Reckitt seeks to excuse its misrepresentations about the available evidence in *Aurobindo* with its glib response that "simply put" these were "different tests, on different products, with different results." *See* D.I. 233 at 22. But this smokescreen does nothing to bolster Reckitt's position. At the end of the day, Reckitt does not

dispute that it performed the very same type of Raman analysis on Aurobindo's ANDA product as it performed on Defendants' ANDA products. Reckitt also does not dispute that it failed to inform the Court of this fact at the March 15 conference. Finally, while the details of Reckitt's Raman maps in *Aurobindo* may have differed to some extent from the Raman maps that Reckitt presented at the trial of this case, Reckitt does not and cannot explain how these alleged differences made the Raman maps in this case more probative of infringement than the maps that "showed nothing" in *Aurobindo*.

In this regard, Reckitt's suggestion in a footnote that the Raman evidence in *Aurobindo* only related to the '252 patent (D.I. 233, n. 6 and n. 8) is entirely disingenuous, and again, obfuscates the issue. Though, Reckitt initially performed its Raman analysis in *both* cases to determine whether or not to drop the '252 patent, it ultimately chose to rely on the Raman analysis *in this case only* to establish infringement of the '821 and '032 patents. And Reckitt did so after concluding in *Aurobindo* that the Raman analysis "*in no way* informed the [infringement] issues on summary judgment" "in particular" under the constructions of the '032 and '821 patents, *not* the '252 patent. *See Aurobindo* Fee Tr. at 28:19-22 (D.I. 226-18, Ex. D to Conroy Decl.).

Reckitt also misleadingly suggests that it did not "assert that it did not conduct structural testing on Aurobindo's product." *See* D.I. 233 at 23, n.8. This is

another obfuscation. Reckitt concedes that its counsel told the Court "in *Aurobindo*, structural data 'wasn't available' in the evidence." *Id.* Critically, however, Reckitt failed to tell the Court that this Raman data "'wasn't available' in the evidence" because Reckitt had concluded that it was *not* probative at all to infringement under the '821 and '032 patents after Judge Stark's claim constructions. *Id.* Reckitt offers no excuse for omitting this very material fact.

If Reckitt had already decided that Raman data had no evidentiary value with respect to proving infringement of the '032 and '821 patents in *Aurobindo,* which involved the same infringement issues as this case, then it was wrong for Reckitt to argue that the same type of Raman evidence was grounds for proceeding with a trial here. By failing to tell the Court about its decision not to rely on Raman testing in *Aurobindo,* rather than letting the Court believe it was not available at all, Reckitt prevented this Court from making an informed decision on whether and how to proceed with this case. Reckitt's lack of candor played a significant role in pushing this case to an unnecessary trial and warrants an award of fees.

## II. Reckitt intentionally mischaracterized Judge Stark's claim construction ruling to excuse its decision to proceed to trial.

As Defendants explained in their opening brief (D.I. 226-1 at 19-22), Reckitt's infringement case was based, in part, on its demonstrably false argument that Judge Stark's "distinct" construction in the context of the '821 and '032 patents differed substantively from the *Watson* court's "discrete" construction in

7

the context of the '252 patent. *Id.* Reckitt tries to defend this dubious argument in its opposition brief by mischaracterizing Defendants' position.

First, Reckitt incorrectly suggests that Defendants are arguing that *Watson* and *Perrigo* were dispositive of the outcome of this case. *See* D.I. 233 at 16. But Defendants did not make this argument in their brief. *See* D.I. 226-1 at 18-19. Instead, Defendants pointed to *Watson* and *Perrigo* as corroboration for the proposition that Reckitt should have known its infringement argument about guaifenesin on the surface of a single formulation matrix tablet was doomed to fail here because that same argument had already been rejected in those cases. And then, Judge Stark had rejected Reckitt's infringement argument for a third time in *Aurobindo* only a week before the March 15 teleconference with this Court.

Reckitt also spends numerous pages arguing that its proposed claim constructions were reasonable. *See* D.I. 233 at 27-31. But again, Reckitt mischaracterizes Defendants' position. Defendants' fees motion is not based on the argument that Reckitt's claim constructions were unreasonable. Instead, like Chief Judge Prost, Defendants contend that it was unreasonable for Reckitt to continue this litigation after the Court rejected Reckitt's claim construction arguments and instead adopted Judge Stark's *Markman* order.

Defendants also contend that it was unreasonable for Reckitt to argue for the first time in Dr. Davies's expert reply report that Judge Stark's "distinct"

8

construction was substantively different from *Watson's* "discrete" construction, which Reckitt had already conceded would end its case. *See* D.I. 233 at 17-18. Though Judge Stark's claim construction ruling was a main focus during *Markman* briefing here, Reckitt *never* argued in any brief or supporting declaration that Judge Stark intended "discrete" and "distinct" to have different meanings. *Id.* In fact, this argument, *which is directly contradicted by Judge Stark's own words*,[3] appeared for the first time in Dr. Davies's reply expert report, which was served after the Court adopted Judge Stark's claim constructions.

Reckitt tries to justify its unreasonable interpretation of Judge Stark's construction by pointing to this Court's ruling that "distinct" and "discrete" have "somewhat different meanings." *See* D.I. 233 at 2 and 18. But Reckitt takes the Court's comments out of context. The Court was referring to *unasserted* dependent claim 3 of the '032 patent, *not* independent claim 1, which was the claim that Judge Stark construed in his decision. *See Reckitt Benckiser LLC v. Amneal Pharm. LLC et al.,* 276 F. Supp. 3d at 271-72. And neither Reckitt nor Dr. Davies were ever able to explain how "discrete" and "distinct" were different in the

---

[3] As Defendants noted in their opening brief (D.I. 226-1 at 19), Judge Stark's words were clear: "[i]n order to avoid confusion, however, *the Court has (non-substantively) modified the Federal Circuit's construction of "portion" by substituting "distinct formulation" for "discrete part of the product.*" *Aurobindo II*, at fn. 5. This unequivocal statement was included within multiple paragraphs explaining how the Federal Circuit's claim construction analysis of the '252 patent was pertinent to Judge Stark's constructions of the '032 and '821 patents.

context of claim 1. Finally, the Court's comments about claim 3 were made in response to Reckitt's argument under the doctrine of claim differentiation—an argument that had no impact on the case because claim 3 was never asserted.

Reckitt also mischaracterizes Defendants' argument that Reckitt made contradictory statements about the '252 patent disclaimer. *See* D.I. 233 at 31-33. Reckitt confuses the issue by arguing that its position on the disclaimer has always been consistent and was "part of multiple reasons why the Court should not adopt Judge Stark's claim construction."[4] *Id.* But Reckitt cannot escape the record, which shows unequivocally that Reckitt flip-flopped on this issue. Reckitt initially argued the Court should reject Judge Stark's claim construction because he purportedly applied the '252 patent disclaimer in his claim construction analysis. D.I. 91 at 13. But after the Court adopted Judge Stark's *Markman* order, Reckitt abruptly reversed course and argued that Judge Stark did *not* apply the '252 disclaimer. *See* D.I. 224 at 22-24. The Court can read Reckitt's words for itself and see Reckitt's change in position.

---

[4] The reasonableness of Reckitt's overall position on the disclaimer was dubious from the start. At the Federal Circuit, the Panel's questions strongly suggested that the Panel believed the disclaimer had not been rescinded by the '032 and '821 patentee. *See* Transcript for *Reckitt Benckiser LLC v. Amneal Pharmaceuticals LLC,* Appeal No. 17-2595, at 12:19-14:2; and 16:12-25 (D.I. 226-21, Conroy Decl. Ex. G.) (Judge Prost: "[I]n this case you had a disclaimer, vis-à-vis Watson, which arguably is pulled through to this child application.")

**III.    That this case went to trial and Dr. Davies provided extensive testimony does not mean that Reckitt's infringement case was reasonable nor that a trial was warranted.**

Reckitt disputes Defendants' argument that an award of attorney's fees is appropriate here because Reckitt chose to proceed to trial with no real evidence of infringement. *See* D.I. 226-1 at 10-15. Reckitt's main response to Defendants' argument is that Defendants would not have needed five experts at trial if Reckitt's infringement theory was baseless. But that argument proves nothing.

Dr. Davies testified about highly technical Raman testing, but his testing was flawed and unreliable, and he misrepresented what it showed. In order to make this apparent to the Court, each Defendant needed to call expert witnesses who understood Raman spectroscopy and image analysis. Also, they each needed to call formulation experts to explain that Defendants' ANDA products are made from a single pharmaceutical formulation, not two distinct formulations, as the claims required. Reckitt apparently believes that Defendants should not have put on a defense at trial if they truly thought that Reckitt's claims were baseless. But this is not how things work in our adversarial system where it is important to establish a record on which the Court and the Federal Circuit can base their decisions.

There can be no doubt that Defendants' expert testimony helped the Court understand the weaknesses in Dr. Davies's testimony, which are noted in the Court's opinion. *See Reckitt Benckiser LLC v. Amneal Pharm. LLC et al.*, 276 F.

11

Supp. 3d at 275-287. Among other things, the Court was troubled by Dr. Davies's concession that an "SR formulation could be transformed into an IR formulation simply by cutting off the original surface of the tablets." *Id.* at 281. This admission, as the Court noted, should have ended the "inquiry as to whether Defendants' tablets have two distinct formulations necessary for a finding of infringement." *Id.* That Reckitt pushed for a trial after Dr. Davies had conceded this point at his deposition several months earlier, underscores Reckitt's unreasonable conduct and further supports Defendants' motion for attorneys' fees in this case. *See* Davies Dep. at 373:4-378:18 (D.I. 139-1 at 94-95).

Reckitt also suggests that it was reasonable for it to proceed to trial because "Defendants' motion [in limine] was denied." *See* D.I. 233 at 13. But this argument is yet another obfuscation. The Court denied Defendants' *in limine* motion as moot because it had already found that Dr. Davies was not a credible expert. *See Reckitt Benckiser LLC v. Amneal Pharm. LLC et al.,* 276 F. Supp. 3d at fn. 15. Thus, the Court's denial of Defendants' *in limine* motion is irrelevant because it was not decided on the merits.

Finally, Reckitt claims that Defendants must have believed that Reckitt's case was reasonable because Defendants opted not to move for summary judgment on a collateral estoppel theory after Judge Stark granted summary judgment in *Aurobindo*. *See* D.I. 233 at 24. This argument is misguided.

Reckitt's argument ignores or mischaracterizes the decision Defendants faced on March 15, 2017, when Defendants first raised the issue of collateral estoppel. At that time, the expiration of the 30-month stay was rapidly approaching. Indeed, the Court noted this, "[i]t seems to [the Court] that it is more expeditious for this Court at that juncture to hear that additional piece of testimony, to hear the defendants' response to that additional piece of testimony through expert testimony or otherwise. . . ." *See* March 15 Status Tr. 24:12 – 25:17. The Court further warned, "there is likely to be an extension of the stay if I do not agree with the defendants' position as to collateral estoppel." *Id.*

Defendants' clients, like every generic company, wanted to launch their ANDA products at the earliest possible date. Had Defendants opted to move for summary judgment on a collateral estoppel theory, the Court could have extended the stay until the motion was resolved and, if necessary, the case was tried. Defendants chose to go to trial where they believed they would win decisively and expeditiously, not because they believed Reckitt's position was reasonable. Reckitt's argument also ignores the fact that Reckitt was the Plaintiff here. Reckitt had an obligation to reassess its case against Defendants after the Court adopted the *Aurobindo* claim constructions, particularly after Judge Stark granted Aurobindo summary-judgment of non-infringement. Reckitt also forgets that it had an obligation to be candid with the Court and Defendants when it claimed, falsely,

13

that Raman evidence was not available in *Aurobindo*, and that this evidence was worthy of a trial even though Reckitt had determined that Raman evidence "in no way" informed the infringement issues under the '032 and '821 constructions.

## IV. Reckitt should have withdrawn its DOE theory in this case after it did so as a matter of law in *Aurobindo*.

Reckitt claims it was reasonable to proceed to trial on a DOE theory because "Defendants conceded that their products met two of the three prongs, namely the function and result prongs." D.I. 233 at 15. But one key problem with this argument is that Reckitt came to the conclusion in *Aurobindo* that it had no legal basis for relying on the DOE in view of the Court's claim construction.

In *Aurobindo,* Reckitt abandoned its DOE arguments because it concluded, *as a matter of law*, that Judge Stark's claim construction did not allow it to argue that a single formulation was equivalent to two distinct formulations. *See* DI. 224 at 24-25. Reckitt now suggests that this decision was "premised on the fact that Reckitt had no structural data [in *Aurobindo*] to show two formulations were 'distinct, identifiable and separate to some degree.'" D.I. 233 at 34. In contrast, Reckitt claims that the Raman data here allowed Dr. Davies to show that there were equivalent IR and SR portions in Defendants' ANDA products.

But this newly hatched argument ignores the fact that Reckitt *did* have Raman data in *Aurobindo* that was substantially similar to the data that Reckitt presented in this case. More importantly, there is not a shred of record support for

14

Reckitt's new argument. To the contrary, the record shows that Reckitt dropped its DOE case in *Aurobindo* as a matter of law based on its understanding of Judge Stark's claim construction order: "Us dropping Doctrine of Equivalents is a recognition that either they have two distinct formulations or they don't. *We can't use Doctrine of Equivalents* to say what they're doing still satisfies the two formulation requirements. . . . "We can't use the doctrine of equivalents, *as we understand the law*, to get around that requirement." *See* Aurobindo SJ Tr. at 46. Thus, Reckitt's spin on why it withdrew its DOE case in *Aurobindo* is wrong.[5]

## V.   Conclusion

For the foregoing reasons, as well as those set forth in Defendants' opening brief, Defendants respectfully urge the Court to declare this case exceptional and award Defendants their attorney's fees under 35 U.S.C. §285. Defendants note that Reckitt has not challenged the amount or reasonableness of the attorneys' fees Defendants seek. Accordingly, the Court should award the full amount of attorneys' fees that the Defendants request.

---

[5] Reckitt also suggests that its DOE case was reasonable because "this Court found that the '252 patent disclaimer did not apply to the '032 patent and '821 patent." *Id.* at 35. There is no basis in the record for this argument. Indeed, the Court made no such finding and never issued an opinion explaining its decision to deny Defendants' disclaimer motion.

Dated: February 1, 2019

*/s/Rebekah R. Conroy*

Rebekah R. Conroy
STONE CONROY LLC
25A Hanover Road, Suite 301 Florham
Park, New Jersey 07932
Telephone: (973) 400-4181
rconroy@stoneconroy.com

Ronald M. Daignault
GOLDBERG SEGALLA LLP
711 Third Avenue – Suite 1900
New York, NY 10017
Telephone: (646) 292-8700
rdaignault@goldbergsegalla.com

Richard Juang
GOLDBERG SEGALLA LLP
8000 Maryland Avenue, Suite 640
St. Louis, Missouri 63105
Telephone: (314) 446-3350
rjuang@goldbergsegalla.com

*Attorneys for Defendant Amneal
Pharmaceuticals LLC*

Respectfully submitted,

*/s/Anandita Vyakarnam*

Constance S. Huttner
Anandita Vyakarnam
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-0999
Telephone: (973) 379-4800
chuttner@buddlarner.com
avyakarnam@buddlarner.com

*Attorneys for Defendants
Dr. Reddy's Laboratories, Ltd. and
Dr. Reddy's Laboratories, Inc.*

16